Not for Publication

United States District Court
for the District of New Jersey

| | |
|---|---|
| TIMOTHY MALONEY,<br><br>      *Plaintiff*,<br> v.<br><br>BANK OF NEW YORK MELLON,<br><br>      *Defendant*. | Civil No: 15-6308 (KSH)(CLW)<br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

## I. INTRODUCTION

Defendant Bank of New York Mellon ("BNY") moves pursuant to *Federal Rules of Civil Procedure* 12(b)(6) to dismiss plaintiff Timothy Maloney's complaint (D.E. 1 ("Compl.")), which alleges violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. ("ADA"), and the New York City Human Rights Law, N.Y. Exec. Law § 296 ("NYCHRL").  BNY further moves for attorney's fees pursuant to 28 U.S.C. § 1927.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Maloney was hired by BNY in December 2011 as a Senior Relationship Manager. (Compl. ¶¶ 18-19.)  After working for the company for less than two months, he took a medical leave of absence to undergo heart transplant surgery.  (Compl. ¶ 20.)  When Maloney returned to work, he was assigned to a different position that was designed for less skilled and experienced employees.  (Compl. ¶¶ 21, 23-24.)  He remained in that position until May 2013, when, after he made many requests to change positions, he was transferred.  (Compl. ¶¶ 25-26.)

1

In September 2013, after around four months in the new position, Maloney asked his supervisor, John Polito, for the accommodation that he work from home two days a week at the recommendation of his heart surgeon. (Compl. ¶ 28.) Maloney claims that several other employees who did not have a serious medical condition were provided with this accommodation. (Compl. ¶ 29.) After more than three weeks and continued follow-up requests, Maloney still had not heard back from Polito. (Compl. ¶¶ 30-31.) On October 17, 2013, Maloney sent an email to BNY's human resources department complaining about the request process and Polito's handling of the request. (Compl. ¶ 34.) Less than ten days later, on or about October 25, 2013, BNY approved Maloney's request and reprimanded Polito. (Compl. ¶¶ 35, 37.)

In April 2014, BNY terminated Maloney's position, citing a "reduction in force." (Compl. ¶¶ 40-41.) Maloney contends that he was the only employee who was fired, and that at the time he was terminated he was covering the department's largest and most profitable customers and his department was already short four positions. (Compl. ¶¶ 42-43.) When Maloney was "informed of his termination, he was presented with a document whereby he was asked to waive his rights against Defendant in exchange for a severance and limited continuation of his health benefits." (Compl. ¶¶ 45.) BNY provided the Court with that document bearing Maloney's signature. (D.E. 5-2 (the "Severance Agreement").)[1] It is composed of two sections: a "Letter Agreement" (D.E. 5-2, Ex. 2), which describes the terms and conditions of Maloney's separation from BNY, and a "General Release" (D.E. 5-2, Ex. A, Attach. A), which waives

---

[1] Generally a district court ruling on a motion to dismiss may not consider documents extraneous to the pleadings. However, documents provided by the defendant that are "integral to or explicitly relied upon in the complaint" and "undisputedly authentic" are available for consideration. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations and internal quotation marks omitted). Maloney references the Severance Agreement in his complaint (Compl. ¶ 45) and discusses it as integral to his claim regarding the validity of this release. Thus, this Court will consider it in evaluating the current motion.

2

Maloney's rights to bring claims for a variety of general laws and some specifically cited statutes.

Under the terms of the Severance Agreement that he signed, Maloney acknowledged that he A) consulted with an attorney; B) signed the agreement freely, voluntarily and knowingly; and C) had "no claim, charge, lawsuit, grievance or cause of action . . . relating to [his] employment or the termination of [his] employment." (Letter Agreement, Sec. XIII; General Release.) More specifically the General Release states that Maloney:

> forever releases and discharges the Company . . . from and against any and all legally waivable claims, grievances, injuries, controversies, agreements, covenants, promises, debts, accounts, sums of money, wages, actions, causes of action, suits, arbitrations, attorneys' fees, costs, or any right to any monetary damages or any other form of personal relief, whether known or unknown, in law or in equity, by contract, tort, law of trust or pursuant to federal, state, or local statute, regulation, ordinance or common law, which [he] now [has], ever [has] had, or may hereafter have, based upon or arising from any fact or set of facts, whether known or unknown to [him], by reason of any matter, cause, act or omission arising prior to [his] signing this General Release, including, without limitation, those arising out of or in connection with [his] employment with or termination from the Company.

(General Release.) The waiver specifically includes "a release to the fullest extent permitted by law of all rights and claims under. . . the Americans with Disabilities Act of 1990 . . . [and] the New York Human Rights law," among other statutes. (General Release.)

BNY gave Maloney 45 days to consider the terms of the Severance Agreement before he had to sign or walk away from it. He had an additional seven days after he signed to revoke his acceptance. (Letter Agreement, Sec. IV.) He signed in April, 2014, the month in which he was terminated. He did not revoke. Under the terms of the Severance Agreement, Maloney was provided with "additional payments and benefits in accordance with the BNY Mellon SUB

Plan" which was designed to "enhance and coordinate with state unemployment benefits." (Letter Agreement, Sec. III.)  Maloney now alleges that he signed the Severance Agreement under duress, without input into the terms of the release, and without counsel.  (Compl. ¶¶ 52-54.)

In his four-count complaint Maloney asserts claims based on retaliation and violations of the ADA and NYCHRL.  BNY has moved to dismiss pursuant to *Rule* 12(b)(6) and to recover attorney's fees pursuant to 28 U.S.C. § 1927.  (D.E. 5.)

### III. DISCUSSION

The issue in this motion to dismiss is not whether Maloney has adequately pleaded claims for discrimination and retaliation under the ADA and NYCHRL.  Instead, the crux of the dispute is whether these claims are barred by the terms of the Letter Agreement and General Release.  Maloney does not deny the existence of these documents or that he signed the General Release.  Rather, he asserts that the broad waiver in the General Release is not valid because he did not knowingly and willfully waive his rights to raise his claims.

It is well accepted that a plaintiff may waive claims with a valid release.  *See Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n. 15 (1974).  "In determining whether a waiver or release is valid, the Third Circuit considers whether it was signed knowingly and willfully." *Coventry*, 856 F.2d at 522 ("an employee may validly waive claims of discrimination so long as the waiver was made 'knowingly and willfully'").  To determine validity, Court reviews the totality of the circumstances under which the release was executed, taking into consideration:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of the plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the

> plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* at 523. Additionally the Court may consider "whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against public interest." *Cuchara v. Gai-Tronics Corp.,* 129 Fed. Appx. 728, 732 (3d Cir. 2005).

In *Cuchara*, a case remarkably similar to this, the Third Circuit affirmed a Pennsylvania district court's holding that the plaintiff knowingly and voluntarily signed a release. The plaintiff there also suffered from a serious medical condition which made a normal work schedule difficult, and he sought various accommodations. *Id.* at 729. Several months later he was fired. *Id.* Upon termination he was offered a severance package which included some additional salary, and medical and dental benefits; in exchange for the package he was required to sign a general release of claims. *Id.* at 730. Cuchara took the package and then brought suit under Title VII, the ADA, the PHRA, and ERISA, and alleged fraudulent inducement as to the severance package. *Id.* His employer filed a motion to dismiss. The district court applied the *Coventry* factors in reviewing the validity of the waiver of claims, through a motion to dismiss, and ruled in favor of the employer. *Cuchara v. Gai-Tronics Corp.*, 2004 WL 1438186 at *5 (E.D. Pa. Apr. 7, 2004), *aff'd* 129 Fed. Appx. 728 (3d Cir. 2005) ("It may be appropriate to undertake this inquiry on a motion to dismiss") (citing *Town of Newton v. Rumery*, 480 U.S. 386 (1987)).

On appeal, the Third Circuit examined the *Coventry* factors and specifically found: 1) the language of the waiver was clear and specific; 2) while Cuchara was not an attorney, there was "no evidence that he was unable to comprehend the language in the release"; 3) the 21 days during which he was given to sign the release provided sufficient time for deliberation; 4)

5

Cuchara was repeatedly advised that he should obtain counsel, had the opportunity to obtain counsel, and chose not to do so. *Cuchara,* 129 Fed. Appx. at 731. Based on those factors alone, the Third Circuit found that the "totality of the circumstances demonstrate that Cuchara knowingly and willfully waived his claims by signing the release."[2]

Applying the *Coventry* factors to this case, Maloney fails to sufficiently plead that the waiver was not signed knowingly and willfully. First, there are no allegations that the language in the release is unclear or that Maloney, given his education or business experience, did not understand the release or severance package terms. Rather, the release is adequately organized and the language clearly states that Maloney "forever releases and discharges the Company" of a list of specific grounds for litigation and, broadly, for litigation "without limitation, arising out of or in connection with [his] employment with or termination from the Company." (General Release.) Additionally, Maloney was given 45 days to consider the terms of the Severance Agreement and had an additional seven days after he signed the documents to revoke his acceptance. (Letter Agreement, Sec. IV.) This was even more time than Cuchara was given to consider his severance package.

Further, like Cuchara, Maloney was advised that he had the right to obtain services of counsel. Maloney merely pleads that he "was not represented by counsel at the time he was pressured to sign the release." (Compl. ¶ 54.) He does not plead why he chose not to obtain counsel or that despite efforts he was unable to obtain counsel. Maloney, like Cuchara, disregarded the option to obtain legal advice, and the decision to forego counsel was a factor the

---

[2] The district court additionally considered the final *Coventry* factors and found first that the plaintiff did not allege that he was already authorized to receive the payments under applicable law or company policy and so he did not sufficiently plead that he was already entitled to the severance package benefits. *Cuchara v. Gai-Tronics Corp.*, 2004 WL 1438186 at *5 (E.D. Pa. Apr. 7, 2004). And second, that while no negotiations took place, the plaintiff did not plead that there was no opportunity for negotiations or that the environment surrounding the execution of the release was oppressive. *Id.*

Third Circuit discussed in finding Cuchara acted voluntarily. Similarly, Maloney's statement that he "had no input whatsoever in the terms of the release" (arguably something that a lawyer could have weighed in on) is nothing more than a legal conclusion, which the court will disregard, *Santiago v. Warminster Twp.*, 629 F.2d 121, 128 (3d Cir. 2010), and does not provide the Court with evidence one way or another as to whether there was an opportunity to negotiate the terms of the agreement. (Compl. ¶53.)   Further, Maloney does not plead that the accepted benefits were merely what he was already entitled to, and based on this Court's reading of the agreement,  it appears clear he received a better benefit package.

This analysis compels the Court to find that Maloney has insufficiently pleaded facts that would permit this Court to deny the motion based on the *Coventry* factors.  The Court now assesses Maloney's allegations of involuntariness on the arguably additional grounds that first, he was faced with a Hobson's choice, and second, he signed the release under duress.

**a. Hobson's Choice**

Maloney asserts that he was faced with "a proverbial Hobson's choice concerning whether to sign the release"; that is, he was put in a situation where he had no choice at all—he had to sign. *See Romero v. Allstate Ins. Co*., 1 F. Supp. 3d 319, 407 (E.D. Pa. 2014), opinion clarified on denial of reconsideration (Apr. 7, 2014) (defining Hobson's choice as "the appearance of choice when none in fact exists").  Courts in this district have recognized situations where it is appropriate to invalidate a release of claims because of a plaintiff's position in such a dilemma.  *See*, *e.g. Coventry*, 856 F.2d at 524 (holding the district court erred in finding a willing and knowing waiver of rights where the plaintiff's "only options were accepting the mutual option pension benefits, and foregoing his claims, or being placed on automatic lay-off and losing his income and hospitalization benefits immediately"); *see also*, *Mullen v. New Jersey*

*Steel Corp.*, 733 F. Supp. 1534, 1546 (D.N.J. 1990) (Lechner, J.) (determining that no Hobson's choice existed where the plaintiff could "receive unemployment compensation and what few benefits were due him and keep his causes of action or could take the Severance Agreement benefits, to which he had no legal right, and forego any claims").

The *Coventry* factors are far more useful as a tool for discernment than a threadbare assertion of "I had no choice."  And applying them, the Court has found that Maloney did not sufficiently pleaded that he signed sign the general release of his claims unwillingly.  Maloney offers on the "no choice but to sign" side of the issue the assertion (Compl. ¶¶46, 49, 50) that BNY knew he was taking medication and had serious heart disease that required constant physician's care.  This, and Maloney's assertion (Compl. ¶ 47)  that he "risked placing his life in jeopardy if he did not sign the release," constitutes the factual presentation in the complaint for Hobson's choice, and the Court finds that it is simply not enough for plausibility.[3]  The complaint is silent as to factual support for the dramatic allegations Maloney makes, such as inability to find another insurer, or that Maloney would have to change doctors or forego specialists, or some other concrete circumstance to show that foregoing the additional benefits in the severance package put him in grave danger, and so he could not walk away.

    b.  **Duress**

Maloney also contends that the Letter Agreement and General Release are invalid because he signed them under duress.  "Under New York law,[4] a claim for duress requires four

---

[3] The pleading requirement has only been heightened since *Cuchara*, by the now familiar *Iqbal/Twombly* pleading standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Ashcroft Corp. v. Twombly,* 550 U.S. 544, 570 (2007).
[4] Not having been disputed by the parties, and in accordance with the Letter Agreement, the Court reviews these substantive arguments under New York law. (Letter Agreement and General Release, Sec. XIII, H (stating "[t]his Letter Agreement, including all attachments, shall be governed by the laws of the State of New York (regardless of conflict laws principles) as to all matters including, without limitation, validity, construction, effect, performance and remedies").)

elements: (1) a threat; (2) unlawfully made; (3) that caused involuntary acceptance of contract terms; (4) because the circumstances permitted no alternative." *Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 232 (3d Cir. 1987). Maloney makes no allegations that BNY unlawfully threatened him, that the acceptance was involuntary, or that there was no alternative—this Court has already found he failed to plausibly plead a Hobson's choice. Moreover, even if the Severance Agreement was signed under duress, "acceptance of benefits under the agreement constitutes ratification." *Mandavia v. Columbia Univ.*, 912 F. Supp.2d 119, 128 (S.D.N.Y. 2012) *aff'd*, 556 F. Appx. 56 (2d Cir. 2014). Maloney did not plead that he disavowed the benefits, from which this Court, unless provided with other evidence, must assume that he accepted the benefits of the severance package, constituting ratification.

As Maloney has failed to sufficiently plead that the release was invalid, the Letter Agreement and General Release prevent recovery in this case. Maloney has therefore failed to plead claims upon which relief can be provided and the motion to dismiss this complaint is granted.

## IV.    ATTORNEY'S FEES AND COSTS UNDER § 1927

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." There must be some ulterior motive such as harassment or delay that is indicative of willful bad faith for a Court to be justified in awarding attorney's fees. *See Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986); *see also Alphonso v. Pitney Bowes, Inc.,* 356 F. Supp.2d 442, 452 (D.N.J. 2005) (Simandle, C.J.) ("[S]anctions attach under Section 1927 when an attorney continues the suit, or some aspect of it, after the attorney learns that it lacks merit."). Courts retain vast

discretion to determine whether to impose fees, but the "power to impose sanctions 'should be exercised with restraint, lest the prospect chill the ardor of proper and forceful advocacy on behalf of [the] client.'" *Alphonso,* 356 F. Supp. 2d at 452 (quoting *Williams v. Giant Eagle Markets,* 883 F.2d 1184, 1194 (3d Cir.1989)).

The intent of attorney's fees as a sanction through § 1927 is to hold counsel accountable for unnecessary and needless delays and actions in bad faith. This Court declines to award fees on the basis that Maloney's complaint was dismissed at this early stage and he did not attach documents to it. Accordingly, BNY's motion for attorney's fees is denied.

## V. CONCLUSION

Based on the foregoing, Maloney has failed to plead facts sufficient to show that he did not knowingly or willingly sign the General Release waiving his rights to bring these claims. As such, the motion to dismiss is granted without prejudice. Additionally, BNY's motion for attorney's fees is denied.

|  |  |
|---|---|
|  | /s/ Katharine S. Hayden\_\_\_\_\_ |
| Date: March 30, 2016 | Katharine S. Hayden, U.S.D.J. |