NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY MALONEY,<br><br>          Plaintiff,<br><br>vs.<br><br>BANK OF NEW YORK MELLON,<br><br>          Defendants. | Civil Action No. 15-cv-06308 (KSH)(CLW)<br><br>**OPINION & ORDER** |

**WALDOR, United States Magistrate Judge**

Before this Court is Plaintiff Timothy Maloney's ("Maloney") motion for leave to amend the original complaint. Defendant Bank of New York Mellon ("BNY") opposes Plaintiff's motion. Having reviewed the arguments made in support and in opposition to the motion, the Court decides this matter without argument under Rule 78 of the Federal Rules of Civil Procedure and, for the reasons set forth below, Plaintiff's motion to amend is denied.

**I.     Procedural History and Background**

Maloney was hired as a Vice President by BNY in December 2011. Compl., Dkt. No. 1 ¶¶ 18-19. Two months into his employment, Maloney took a leave of absence to undergo a heart transplant procedure. *Id.* ¶ 20. When Maloney returned to work, he was placed in a different position at BNY where he was given less responsibility and encountered difficulty when he sought accommodation for his post-transplant medical issues. *Id.* ¶¶ 21, 23, 28-35. In April 2014, BNY terminated Maloney. *Id.* ¶ 40. After being informed that he was terminated, Maloney signed a Letter Agreement and General Release ("the Release"), which waived his right to sue BNY under certain statutes, including the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL"). *Id.* ¶ 45; Decl. of Dean Anderson, Dkt. No. 5, Attach. 2.

On August 20, 2015, Maloney filed a complaint against BNY, alleging violations of the ADA and NYCHRL. BNY moved to dismiss Maloney's complaint on the grounds that Maloney had already waived his right to sue under the ADA and NYCHRL by signing the Release. Maloney contended that his signing of the release did not constitute a valid waiver. Op., Dkt. No. 18, at 4. The District Judge found that the Release constituted a valid waiver of the ADA and NYCHRL claims and granted BNY's motion to dismiss without prejudice. *Id.* at 10; Order, Dkt. No. 21. Thereafter, Maloney filed the present motion seeking to amend his original complaint to include new allegations, which are contained in an attached proposed amended complaint.

## II.     Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows a party to amend its pleading by leave of court when justice so requires. While leave to amend pleadings is to be freely given, Fed. R. Civ. P. 15(a)(2), the decision to grant leave is left to the discretion of the Court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Pursuant to *Foman*, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment. *Id.* The burden is generally on the party opposing the amendment to establish that the amendment should not be permitted. *Id.*

The only basis for denial suggested by defendant BNY is futility. Courts evaluate futility using the same standard that is applied motions to dismiss under 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). A party only survives a motion to dismiss where, accepting all of the alleged facts as true, a party fails to plead "enough facts to state a claim to relief that is plausible on its face[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that the facts alleged must permit "the court to draw the reasonable inference that the defendant is liable for misconduct alleged"); *Fowler v. UMPC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The pleadings require more than a formulaic recitation of the elements of a claim. *Twombly*, 550 U.S. at 555. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*; *see also* Fed. R. Civ. P. 8(a)(2).

Therefore, in considering a motion for leave to amend after the original complaint was dismissed pursuant to 12(b)(6), as the Court does here, the motion is appropriately denied where, accepting all the allegations as true, the proposed amendments fail to correct the deficiencies contained in the original pleading. *See, e.g.*, *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2007).

### III.  Discussion

Maloney's original complaint was dismissed because it failed to plead facts showing that the Release he signed upon termination did not constitute a valid waiver of the ADA and NYCHRL claims. The Court therefore must decide whether the new allegations contained in the Proposed Amended Complaint correct these deficiencies.

#### A. ADA Claims

The District Judge considered whether Maloney had properly waived his right to sue BNY on federal ADA claims under the standard dictated in *Coventry v. U.S. Steel Corp.*, 856 F.2d 514. Op. at 4-8. The *Coventry* standard dictates that in order for a waiver to be valid, it must be made knowingly and willfully. *Id.* at 522. To determine whether a waiver is made knowingly and willfully, a Court must consider the totality of the circumstances under which it was signed, including:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of the plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an

attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* at 524. Considering these factors, the District Judge found that there was nothing indicating Maloney lacked the capacity to understand the Release; the forty-five days Maloney was given to consider whether to sign the Release and the seven days to revoke after signing it constituted ample time to make a decision; there was nothing in the complaint suggesting Maloney lacked the opportunity to negotiate the terms of the Release; there was nothing suggesting that the Release was unclear; Maloney was advised of his right to see counsel, even though he chose not to exercise that right; Maloney received a better benefits package as consideration for signing the Release; and that Maloney's assertion that he was put in a situation where he was faced with no choice but to sign due to his medical condition—sometimes called a "Hobson's choice"[1]—did not meet the *Twombly/Iqbal* plausibility standard. Op. at 4-8. In light of these findings, the District Judge concluded that Maloney failed to sufficiently plead facts showing that that the Release had not been signed knowingly and willingly. *Id.* In order to overcome the challenge of futility, Maloney's new allegations must meet the requirement of plausibility and tip the balance of the *Coventry* factors in the other direction.

First, Maloney alleges that he was "informed that [BNY] would not negotiate the terms of the separation agreement." Prop. Am. Compl., Dkt. 22-2, ¶ 51. While this allegation does address one of the deficiencies articulated by the District Judge, this is nothing more than a formulaic recitation of one of the factors of the *Coventry* test. *See Twombly*, 127 S.Ct. at 1964-65. It is exactly

---

[1] The District Judge acknowledged that the "Hobson's choice" question was "arguably additional grounds" from the *Coventry* analysis on which to argue that the waiver was invalid, but came to the same conclusion and asserted that *Coventry* was still the proper test under which to evaluate the presence of a Hobson's choice. Op., at 7-8. Likewise, in *Coventry* itself (which Maloney cites to advance his Hobson's choice argument) the Hobson's choice consideration is rolled into the general analysis. The Court follows the guidance of both the District Judge and the Third Circuit and considers the Hobson's choice question under the *Coventry* analysis.

the sort of "bald assertion" the court does not need to accept as true, *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429 (3d Cir. 1997), and it does nothing to advance Maloney's argument against the validity of the Release.

Next, Maloney alleges that he did not exercise his right to counsel for fear of losing his health insurance and needing to find new doctors and sources of medication. Prop. Am. Compl. ¶ 68. It is not clear how this fear affected his ability to seek the advice of counsel since, as already noted, Maloney was given forty-five days to decide whether to sign the Release and seven days to revoke after signing, which was sufficient time to seek the advice of counsel without fear of losing benefits. Maloney seems to suggest that he failed to seek counsel out of fear of retaliation, which he alleged he experienced as a result of unrelated earlier requests. Prop. Am. Compl. ¶¶ 30-40. Maloney, however, was advised by BNY to retain counsel, Anderson Decl., Ex. A, at 9, which mitigates the prospect of retaliation. Indeed, retaining counsel would have served to protect Maloney from the sort of unlawful retaliation he feared. The Court finds that ultimately this new allegation does not indicate that Maloney's right to counsel was in any way limited.

Maloney also contends that the benefits offered in exchange for signing the Release were benefits to which he was already entitled by BNY's Supplemental Unemployment Benefit ("SUB") Plan, Prop. Am. Compl. ¶¶ 71-77, and therefore BNY provided no consideration in exchange for Maloney's signing the release or, at the very least, the contract is ambiguous as to this point, and therefore it is a question of fact that cannot be decided at such a preliminary stage. It is a general principle of contract law that ambiguity exists only where a contract is reasonably susceptible to more than one interpretation and that that determination is a question of law for the court. *Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012). Maloney does not attach the SUB Plan or Release to his complaint, but a court must

consider any "undisputedly authentic documents if the plaintiff's complaint is based upon them." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that purchase and sale agreement between two parties should be considered where defendant attached it to its motion to dismiss); *Wingate Inns Int'l, Inc. v. Hightech Inn.Com LLC,* No. 07–5014, 2009 WL 348525 (D.N.J. Feb.11, 2009) ("In reviewing a motion to dismiss[,] a court may consider [any] documents attached to or specifically referenced in the complaint."); *see also* Op., at 6 (examining Release in deciding motion to dismiss). Accordingly, the Court considers the Release and the SUB Plan to determine whether there is any basis to Maloney's assertion of ambiguity. Looking at the language of the Release, it clearly provides that signing the Release is a condition of receiving "additional payments and benefits," which are distinguished from the payments that an employee receives upon termination. Anderson Supp. Decl., Dkt. 25, Ex. A, at 1. Likewise, the SUB Plan clearly provides that one of the conditions for receipt of "Employment Transition Benefits" is that the terminated employee "sign and have not revoked a letter agreement and general release acceptable to the employer." *Id.* at 5. Thus, the Court concludes that Maloney did in fact receive additional and substantial benefits by signing the Release to which he was not already entitled.

Maloney alleges that he faced a Hobson's choice because his "only option was to accept the severance package and sign a release or face the imminent loss of income an medical benefits." Prop. Am. Compl. ¶ 60. The District Court already held that without "concrete circumstances" showing that Maloney had to sign the Release or face "grave danger," he did not sufficiently plead a Hobson's choice. Op. at 7-8. To this end, Maloney contends that, without signing the Release, his health insurance would continue only until June 2014, Prop. Am. Compl. ¶ 61, i.e., one to two months following his termination in April 2014. *Id.* ¶ 41. The presence of benefits, even if only

for a month, distinguishes Maloney's case from *Coventry* and *Torrez v. Pub. Serv. Co. of New Mexico*, 908 F.2d 687 (10th Cir. 1990), on which Maloney relies. In those cases, the plaintiffs were faced with signing a waiver or receiving no benefits whatsoever. Maloney alleges that in his case there was not sufficient time to find health care providers due to the number of doctors he requires. Prop. Am. Compl. ¶ 62. This allegation might rise to the level of plausibility were Maloney given only a few days to find new doctors, but it should have been possible to obtain doctors in one to two months. If it was not possible to do so, Maloney could have alleged facts showing that to be the case.

Finally, Maloney argues that at the time he signed the Release he lacked the mental capacity to waive his rights. On this point, Maloney alleges that all he could focus on was his fear of losing medical care due to the stress of his medical condition and that the news of his termination caught him by surprise and "traumatized" him. Prop. Am. Compl. ¶¶ 65-69.  The Third Circuit has found similar arguments unpersuasive. In *Cuchara v. Gai-Tronics Corp.*, the court found that where a plaintiff was given a twenty-one day window to decide whether to sign a release of federal claims, the plaintiff's allegations of "shock" upon learning of dismissal were insufficient to survive a motion to dismiss. 2004 WL 1438186, at *6 (E.D. Penn. 2004). Again, Maloney was given forty-five days to decide whether to sign the Release—more than twice the amount of time available to the plaintiff in *Cuchara*—plus the opportunity to revoke within seven days. In *Wastak v. Lehigh Valley Health Network*, the court found, in deciding summary judgment, that a plaintiff's claim that he suffered "psychological trauma" from his sudden termination and the expected consequences thereof was insufficient in the absence of any supporting evidence in the record; the court also emphasized that mental incapacity is not established by the presence of financial pressure alone. 342 F.3d 281, 295 (3d Cir. 2003). Maloney fails to plead facts showing incapacity

for a month, distinguishes Maloney's case from *Coventry* and *Torrez v. Pub. Serv. Co. of New Mexico*, 908 F.2d 687 (10th Cir. 1990), on which Maloney relies. In those cases, the plaintiffs were faced with signing a waiver or receiving no benefits whatsoever. Maloney alleges that in his case there was not sufficient time to find health care providers due to the number of doctors he requires. Prop. Am. Compl. ¶ 62. This allegation might rise to the level of plausibility were Maloney given only a few days to find new doctors, but it should have been possible to obtain doctors in one to two months. If it was not possible to do so, Maloney could have alleged facts showing that to be the case.

Finally, Maloney argues that at the time he signed the Release he lacked the mental capacity to waive his rights. On this point, Maloney alleges that all he could focus on was his fear of losing medical care due to the stress of his medical condition and that the news of his termination caught him by surprise and "traumatized" him. Prop. Am. Compl. ¶¶ 65-69.  The Third Circuit has found similar arguments unpersuasive. In *Cuchara v. Gai-Tronics Corp.*, the court found that where a plaintiff was given a twenty-one day window to decide whether to sign a release of federal claims, the plaintiff's allegations of "shock" upon learning of dismissal were insufficient to survive a motion to dismiss. 2004 WL 1438186, at *6 (E.D. Penn. 2004). Again, Maloney was given forty-five days to decide whether to sign the Release—more than twice the amount of time available to the plaintiff in *Cuchara*—plus the opportunity to revoke within seven days. In *Wastak v. Lehigh Valley Health Network*, the court found, in deciding summary judgment, that a plaintiff's claim that he suffered "psychological trauma" from his sudden termination and the expected consequences thereof was insufficient in the absence of any supporting evidence in the record; the court also emphasized that mental incapacity is not established by the presence of financial pressure alone. 342 F.3d 281, 295 (3d Cir. 2003). Maloney fails to plead facts showing incapacity

to the extent required to survive a motion to dismiss. In general, succeeding on a claim for incapacity requires showing that the party lacks "sufficient mental capacity to understand in a reasonable manner the nature of the transaction which he or she is engaging in and to understand its consequences and effect upon his or her rights and interests." 53 Am. Jur. 2d Mentally Impaired Persons § 146. Maloney's allegations reiterate that he was preoccupied and terrified by his dire situation, but he alleges no facts, other than bald assertions, evidencing he lacked the ability to understand the terms of the Release.

In light of the above, the Court holds that Maloney's proposed amended complaint fails to shift the balance of *Coventry* factors in favor of finding that Maloney did not knowingly and willfully waive his potential ADA claims.

### B. NYCHRL Claims

Unlike the ADA claim, New York law governs the validity of the waiver of the NYCHRL claim. Op. at 8, n4. "Under New York law, a claim for duress requires four elements: (1) a threat; (2) unlawfully made; (3) that caused involuntary acceptance of contract terms; (4) because the circumstances permitted no alternative." *Id.* at 8-9 (citing *Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 232 (3d Cir. 1987)). The District Judge found that Maloney failed to show threat, involuntary circumstances, or lack of alternative. *Id.* at 9. Furthermore, acceptance of the benefits of the severance package constituted ratification of the Release and the District Judge found that Maloney failed to show that he disavowed the benefits. *Id.* Maloney's proposed amended complaint fails to correct any of these deficiencies and consequently fails to establish that Maloney did not validly waive his right to sue under the NYCHRL.

### C. Defendant's Request for Attorney's Fees

Defendant BNY requests attorney's fees and costs under 28 U.S.C. § 1927. As noted by the District Judge, "[t]here must be some ulterior motive such as harassment or delay that is indicative of willful bad faith for a Court to be justified in awarding attorney's fees." Op. at 9 (citing *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986)). The Court discerns no such circumstances in the present case, and accordingly denies BNY's request for attorney's fees.

## IV. Conclusion

For the above reasons, the Court finds that Defendant BNY has successfully shown that Plaintiff Maloney's proposed amendments would be futile.

**ACCORDINGLY, IT IS** on this 14th day of September, 2016,

**ORDERED** that Plaintiff's motion for leave to amend is denied; and

**FURTHER ORDERED** that the Clerk shall terminate ECF No. 22.

s/ Cathy L. Waldor
**CATHY L. WALDOR**
**UNITED STATES MAGISTRATE JUDGE**